IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| WAYNE WILLIS, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| vs. | ) Case No. 3:14-cv-00552-NJR-RJD |
| | ) |
| RASHIDA POLLION, RICHARD HARRINGTON, THOMAS MEZO, and OFFICER JOHN DOE, | ) |
| | ) |
| Defendants. | ) |

# MEMORANDUM AND ORDER

**ROSENSTENGEL, District Judge:**

This is a prisoner civil rights lawsuit arising out of events that occurred at Menard Correctional Center ("Menard"). In August 2013, Plaintiff Wayne Willis, an inmate at Menard, was transferred from general population to a cell in the prison's segregation unit. After the transfer, Willis discovered there was no running water in the new cell. According to Willis, due to the lack of running water, he felt sick, dizzy, dehydrated, constipated, had severe headaches, and was unable to take his medication for 26 and a half days of the 28 days he was in that segregation cell (Doc. 1, p. 16).

Willis filed this lawsuit on May 14, 2014, and on June 12, 2014, Judge Gilbert screened the Complaint pursuant to 28 U.S.C. § 1915A. Judge Gilbert held in the screening order that Willis stated a colorable Eighth Amendment conditions of confinement claim against Defendants Rashida Pollion (Nurse Practitioner at the Menard Health Care Unit), Richard Harrington (Menard Warden), Thomas Mezo

(Correctional Officer), and an unnamed John Doe Correctional Officer. The three named Defendants now seek summary judgment (Docs. 27 and 30).

## BACKGROUND

On August 8, 2013, Willis was transferred from general population to segregation (Doc. 28-1, p. 3).[1] The following morning, August 9, 2013, Willis was transferred to a different cell in segregation (cell 244, North 2 Cell House) where the incidents that give rise to this litigation occurred (*Id.*). Upon arriving at cell 244, Willis realized that the cell lacked running water (*Id.*). Willis's cellmate, an inmate named McCall Cleveland, told Willis that cell 244 had lacked running water for as long as he had been there (*Id.*). Willis was transferred out of cell 244 and back into general population on September 6, 2013 (Doc. 31-15, p. 1). There was no running water in cell 244 nearly the entire time Willis was there.[2] (Doc. 28-1, p. 4).

While in cell 244, Willis received three meals per day (*Id.*). Each meal was delivered to his cell and included a carton of milk or juice (*Id.*). During this period, Willis was also taking five medications, each in pill form: Metformin (diabetes medication that manages blood sugar); Calan (hypertension medication); hydrochlorothiazide (also treats hypertension); fish oil; and aspirin (Doc. 28-1, p. 5). Because there was no running water in his cell, Willis asserts that he was unable to take the medication. The lack of medication caused Willis to experience dizziness, headaches, dehydration, and constipation (Doc. 28-1, p. 7). Willis was asked at his deposition whether he could have

---

[1] Willis stated in his deposition that he was transferred to segregation "[b]ecause I had went to the law library and copied a guy's brief, and it wasn't in my name so they sent me to seg for that." (Doc. 28-1, p. 3).
[2] Willis stated in his deposition that "I think a day and a half before I left [cell 244] only the hot water worked, and it wouldn't stop running." (Doc. 28-1, p. 4).

simply taken the medication with the milk or juice. Willis responded that he did not drink the milk or juice because he has diabetes (Doc. 28-1, p. 4) and because he does not like the taste[3] (Doc. 28-1, p. 12). Defense counsel asked Willis at his deposition if he consumed *any* fluids during his stay in cell 244 (Doc. 28-1, p. 5). Willis remarked that he was sometimes served fruit and fruit cocktail on his food tray, and that he sustained himself with the associated liquids (*Id.*). When questioned by defense counsel at his deposition, Willis also admitted that he was able to swallow his two blood pressure medications and aspirin simply by using the saliva in his mouth (*Id.*). Willis noted that his blood pressure and aspirin pills are smaller in size (*Id.*).

Although Willis spent most of his time in his cell, he did visit the Menard Health Care Unit ("HCU").[4] On August 13, 2013, Willis was escorted to the HCU chronic clinic for his diabetes and hypertension (Doc. 28-1, pp. 6-7). Inmates are typically charged a $5.00 co-pay for medical examinations, but inmates with illnesses such as asthma or diabetes take part in regularly scheduled, free examinations known as "chronic clinics" (Doc. 28-2, p. 2). At the August 13 chronic clinic, Nurse Pollion examined Willis and measured his vital signs (Doc. 28-1, p. 7). During the examination, Willis asked Nurse Pollion for a cup of water to take his medication and told her about the situation in his

---

[3] The following exchange took place at Willis's deposition:
>Q [Assistant Illinois Attorney General]: I'm by no means an expert and I'm not a diabetic, but would it have been feasible to take like a sip of the juice just to take your diabetic pill?
>A [Willis]: No.
>Q: Do you know why not?
>A: Because I don't even like juice now and that's why I don't drink it.
>Q: How about the milk?
>A: That either.
>Q: Because of the taste?
>A: Both.

(Doc. 28-1, p. 12).

[4] Willis stated at his deposition that he was also permitted weekly visits to the prison yard while in segregation, but he chose not to go (Doc. 28-1, p. 8).

segregation cell (*Id.*). Willis also mentioned to Nurse Pollion that he had recently fallen out of the top bunk of his cell and that his back and neck were in pain (*Id.*). Nurse Pollion responded by telling Willis that he was only in the HCU for the chronic clinic and that she would not provide him with water or treat his injury (*Id.*).

Also included in this lawsuit are Defendants Richard Harrington, Correctional Officer Thomas Mezo, and an unnamed John Doe Correctional Officer. Richard Harrington was the warden at Menard during the time period relevant to this suit (Doc. 28-1, p. 9). When an inmate files a grievance marked "emergency," the prison warden will personally determine whether the grievance should be handled on an expedited basis (Doc. 28-1, p. 10). Willis did not have any personal interaction with Warden Harrington during his 30 days in segregation, but he did file multiple emergency grievances addressing the situation in the cell, both during his time in segregation and shortly thereafter (*Id.*). Some grievances were responded to, some were not (*Id.*). Attached to Willis's Complaint are grievances dated September 18, 2013, and September 20, 2013, that have Warden Harrington's signature (Doc. 1, pp. 23-26). There is no record, however, of Warden Harrington reviewing any grievances while Willis was still in the segregation cell.

Willis did personally interact with Correctional Officer Thomas Mezo (Doc. 28-1, p. 11), who worked in the segregation unit during his 30-day stay (*Id.*). Willis told Mezo about the lack of running water (*Id.*). Mezo told Willis that there was nothing he could do (*Id.*). Willis also spoke to an unnamed correctional officer immediately after arriving in cell 244 (Doc. 1). The correctional officer also declined to help (*Id.*).

After moving out of cell 244, Willis was able to complete the IDOC administrative remedies process. On April 2, 2014, the IDOC Administrative Review Board denied his grievances that addressed the conditions in cell 244 (Doc. 1, p. 19). Willis then filed suit on May 15, 2014 (Doc. 1). Defendants now seek summary judgment.

## ANALYSIS

### A. Legal Standard

Pursuant to Rule 56 of the Federal Rules of Civil Procedure, summary judgment will be granted if the "movant shows that there is no genuine dispute as to any material fact and the movant is entitled to a judgment as a matter of law." FED. R. CIV. P. 56. At the summary judgment phase of the litigation, the facts and all reasonable inferences are drawn in favor of the nonmoving party. *Kasten v. Saint-Gobain Performance Plastics Corp.*, 703 F.3d 966, 972 (7th Cir. 2012). The Court shall "neither come to a conclusion on factual disputes nor weigh conflicting evidence." *E.E.O.C. v. Sears, Roebuck & Co.*, 233 F.3d 432, 436 (7th Cir. 2000). Summary judgment shall be denied "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

The Eighth Amendment places a duty on prison officials to provide prisoners "humane conditions of confinement." *Farmer v. Brennan*, 511 U.S. 825, 832 (1994). This means that prison officials must "take reasonable measures to guarantee the safety of the inmates" and "ensure that inmates receive adequate food, clothing, shelter and medical care." *Id.* "[P]rison officials have a responsibility to provide inmates with a minima of shelter, sanitation and utilities—basic necessities of civilized life." *Johnson v. Pelker*, 891 F.2d 136, 139 (7th Cir. 1989) As such, a "prison official's deliberate indifference to a

substantial risk of serious harm to an inmate violates the Eighth Amendment," *Id.* at 828, and "[p]ursuant to 42 U.S.C. § 1983, a prisoner may bring suit against any person who caused a violation of the prisoner's Eighth Amendment rights while acting under color of state law." *Berry v. Peterman*, 604 F.3d 435, 439 (7th Cir. 2010).

A prisoner plaintiff needs to establish two elements to succeed on an Eighth Amendment claim. The first is an objective component requiring that the deprivation or conditions of confinement alleged are "sufficiently serious" so as to result in the denial of "the minimal civilized measure of life's necessities." *Farmer*, 511 U.S. at 834. Generally, the prisoner plaintiff must show that he is or was "incarcerated under conditions posing a substantial risk of serious harm" to his health or safety. *Id*. The second element is a subjective component, which requires the prisoner plaintiff to establish that the defendants were "deliberately indifferent" to the unlawful conditions of confinement. *Id*. In conditions of confinement cases, the relevant state of mind is deliberate indifference to an inmate's health or safety; the official must be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he also must draw the inference. *Id.* at 839. This subjective state of mind component is akin to intentional or criminally reckless conduct. *Salazar v. City of Chicago*, 940 F.2d 233, 238 (7th Cir. 1991); *Rivera v. Gupta*, No. 15-3462, 2016 WL 4703493, at *3 (7th Cir. Sept. 8, 2016).

**B.     Defendants Harrington and Mezo**

Defendants Harrington and Mezo argue that summary judgment is appropriate because they were not deliberately indifferent to Willis's conditions of confinement or his serious medical needs.

First, Defendants assert Willis cannot satisfy the objective component of his Eighth Amendment claim because he was not deprived of basic human needs or "incarcerated under conditions posing a substantial risk of serious harm" to his health or safety. Specifically, Defendants claim that if an inmate informs Defendant Mezo of a maintenance issue, he first checks to see whether the issue actually exists, then puts in a work order to fix the problem. Here, no such work order regarding the water in cell 244 were entered into the system during the time Willis was in segregation. Willis disputes Defendants Harrington and Mezo's version of the facts, claiming that Defendant Mezo ignored his complaints and never entered a work order. Drawing all reasonable inferences in favor of the nonmoving party as this Court is required to do, a jury could find that there was no work order in the system because Defendant Mezo did, in fact, ignore Willis's complaints regarding the lack of running water in his cell.

Defendants Harrington and Mezo also argue that, even assuming a work order was somehow not entered into the Menard database, no reasonable jury could find in favor of Willis at trial based on his "delusional" claim that he went without water for 28 days. Defendants cite to WebMD to support their assertion that a human can only live for a few days without water. Willis asserts, however, that he subsisted on the juice from mixed fruit, fruit cocktail, and liquid associated with the foods on his tray. Willis never claims he had *nothing* to drink while he was in cell 244, just that he was deprived of running water to drink and with which to take his medicine.

Finally, Defendants claim the objective prong is not satisfied because Willis admits he could have taken his medication with milk, juice, or the food he was served.

Yet, Willis deliberately chose not to take his medication with milk or juice because he does not like the taste. There is also evidence in the record, however, that Willis chose not to drink milk or juice because they contain sugar, which the prison had educated him not to consume due to his diabetes. Even if Willis could have taken his medication with the milk or juice, the Court is unable to conclude at this stage of the proceedings that allowing a prisoner to remain in a cell for 26 and a half days without running water while ignoring his requests for said water falls within the "civilized standards, humanity, and decency" recognized in this circuit. *See Johnson v. Pelker*, 891 F.2d 136, 139 (7th Cir. 1989) (placing a prisoner in a cell for three days without running water and in which feces are smeared on the walls while ignoring his requests for cleaning supplies and for the water to be turned on likely does not fall within the "civilized standards, humanity, and decency" recognized in the Seventh Circuit). Because Willis has alleged a "sufficiently serious" condition of confinement that denied him of "the minimal civilized measure of life's necessities," the objective component of Willis's Eighth Amendment claim is satisfied.

Turning to the subjective component, Defendants Harrington and Mezo argue that Willis did not have any personal interaction with Defendant Harrington during his 30 days in segregation; thus, Defendant Harrington could not have acted with deliberate indifference to his conditions of confinement or his serious medical needs. Willis disputes this fact, however, and asserts in his Complaint that he sent multiple emergency grievances to the warden, some of which could have been during his term of confinement in segregation (Doc. 28-1, p. 10). At the very least, there is a genuine issue of

material fact as to whether Willis submitted an emergency grievance to Defendant Harrington during his time in segregation, which would have put Defendant Harrington on notice of Willis's alleged conditions of confinement. As a result, summary judgment is improper as to Defendant Harrington.

Defendants' argument as to Defendant Mezo likewise fails. Defendants again argue that had Willis informed Defendant Mezo of the lack of running water, Defendant Mezo would have first verified whether the water was working. If the water was not running, then Defendant Mezo would have filled out a work order form for the Menard maintenance department to check on the water issue. Defendants' argument ignores the summary judgment standard, which requires the Court to view all facts and inferences in favor of Willis. Under that standard, the Court must infer that no work order existed because Defendant Mezo ignored Willis's request.

Defendants have failed to prove that they were not "deliberately indifferent" to any unlawful conditions of confinement. Accordingly, summary judgment cannot be granted on that basis.

Finally, Defendants Harrington and Mezo argue they are shielded by qualified immunity. Government officials are generally shielded from liability under § 1983 for actions taken while performing discretionary functions, unless their conduct violates clearly established statutory or constitutional rights of which a reasonable person would have known. *Harlow v. Fitzgerald*, 457 U.S. 800, 818, 102 S.Ct. 2727, 2738 (1982); *Brokaw v. Mercer County*, 253 F.3d 1000, 1022 (7th Cir. 2000). Given that Willis went 26 and a half days without running water, the Court cannot conclude at this point in the litigation that

Willis was not denied a clearly established statutory or constitutional right. *See Farmer*, 511 U.S. at 832 (the Eighth Amendment requires prison officials to provide prisoners with humane conditions of confinement); *Johnson*, 891 F.2d at 139 (prison officials must provide inmates with the basic necessities of civilized life). Thus, the Court declines grant summary judgment on the basis of qualified immunity.

C.   **Defendant Pollion**

Defendant Pollion also seeks summary judgment, arguing that, as an Advanced Practice Nurse, she had no control over or influence over cell maintenance issues. Furthermore, because she only saw Willis one time during his time in segregation, at most she can only be responsible for depriving Willis of one dose of his Metformin and fish oil (the pills he could not swallow without water).

Willis does not dispute that Defendant Pollion had no control over cell maintenance issues such as his lack of running water. Accordingly, the Court need only determine whether Defendant Pollion's refusal to treat Willis constituted deliberate indifference to his serious medical needs. As previously noted, Willis saw Defendant Pollion at the chronic clinic on August 13, 2013, and he asked her for water to take his medication. Defendant Pollion told Willis she would not be able to get him any water.

Attached to her motion for summary judgment is an affidavit from Nurse Pollion (Doc. 28-2). Nurse Pollion states in her affidavit that Willis did not appear to be in "acute distress," noting that "[h]is temperature was 98.9, blood pressure 126/77, pulse 73 and respirations 18 breaths per minute" (Doc. 28-2, p. 3). Furthermore, his blood pressure was noted to be within his "goal" range and his hemoglobin A1C level was within

normal limits at 5.7% on August 8, 2013 (Doc. 28-3, pp. 1, 7, Doc. 28-2, p. 4). Nurse Pollion also stated that she does not remember if Willis asked her for a cup of water during the examination (Doc. 28-2, p. 3). Even if he did, however, she would not have been able to provide him one because they do not keep cups in the examination rooms (*Id.*).

Given these facts, Defendant Pollion claims she could only be liable for refusing to provide Willis with one dose of his medication, and Willis has provided no evidence that the one missed dose caused him any harm or exposed him to any level of appreciable harm. In *Jackson v. Pollion*, a case where the plaintiff was denied his hypertension medication for three weeks, the Court of Appeals stated:

> No matter how serious a medical condition is, the sufferer from it cannot prove tortious misconduct (including misconduct constituting a constitutional tort) as a result of failure to treat the condition without providing evidence that the failure caused injury or a serious risk of injury. For there is no tort—common law, statutory, or constitutional—without an injury, actual or at least probabilistic.

*Jackson v. Pollion*, 733 F.3d 786, 790 (7th Cir. 2013).

Here, Willis's medical records indicate that his diabetes and blood pressure were both under control and at "goal" levels. Furthermore, Willis has provided no evidence that the one refused dose of medication by Defendant Pollion caused him injury or a serious risk of injury. Because Willis concedes Defendant Pollion had no control over the conditions of his confinement, and because Willis has provided no evidence to indicate Defendant Pollion's refusal to give water for one dose of his medication caused injury or a serious risk of injury, the Court agrees summary judgment is appropriate as to Defendant Pollion.

## CONCLUSION

For the reasons stated above, summary judgment as to Defendants Richard Harrington and Thomas Mezo is **DENIED**. Summary judgment is **GRANTED** as to Defendant Rashida Pollion. The Clerk of Court is **DIRECTED** to enter judgment accordingly at the close of the case.

**IT IS SO ORDERED.**

**DATED:   September 30, 2016**

_____
**NANCY J. ROSENSTENGEL**
**United States District Judge**